Case No. 3:21-cv-03129-B

---

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

---

In re: HIGHLAND CAPITAL MANAGEMENT, L.P.,

　　　　　　　　　Reorganized Debtor.

---

CHARITABLE DAF FUND, L.P. and CLO HOLDCO, LTD., directly and derivatively,

　　　　　　　　　Appellants,

　　　　v.

HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND HCF ADVISOR, LTD., and
HIGHLAND CLO FUNDING, LTD., nominally,

　　　　　　　　　Appellees.

---

On Appeal from the United States Bankruptcy Court for the Northern
District of Texas, Dallas Division, Adv. Pro. No. 21-03067-sgj
Hon. Stacey G. C. Jernigan

---

## APPELLEE'S BRIEF

---

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

# TABLE OF CONTENTS

**Page**

I.     ISSUES PRESENTED ............................................................................................. 2

II.    STANDARD OF REVIEW ...................................................................................... 2

    A.     Collateral Estoppel ..................................................................................... 2

    B.     Judicial Estoppel ......................................................................................... 2

III.   SUMMARY OF THE ARGUMENT ........................................................................ 3

IV.    STATEMENT OF THE CASE ................................................................................. 5

    A.     The Bankruptcy Case ................................................................................. 5

    B.     The HarbourVest Settlement ...................................................................... 7

    C.     Appellants Commence the Action Arising from the Settlement ............... 12

    D.     Highland Moves to Enforce the Standing Order of Reference ................. 13

    E.     Highland Moves to Dismiss the Action; Appellants Move to Stay ........... 14

    F.     The Action is Referred to the Bankruptcy Court ..................................... 14

    G.     The Bankruptcy Court Dismisses the Action ........................................... 15

        1.     Res Judicata .................................................................................. 15

        2.     Collateral Estoppel ....................................................................... 15

            i.     The Issues are the Same and Were Previously Litigated ............. 16

            ii.    The Issues were Essential to the Settlement Order ..................... 19

        3.     Judicial Estoppel ........................................................................... 20

            i.     CLOH's Positions are Inconsistent ............................................ 20

            ii.    The Bankruptcy Court Accepted CLOH's Position ..................... 21

    H.     Appellants Appeal the Order ..................................................................... 22

V.     ARGUMENT .......................................................................................................... 23

    A.     The Bankruptcy Court Properly Found the Claims are Barred by Collateral Estoppel ..................................................................................................... 23

        1.     The Bankruptcy Court Properly Applied Collateral Estoppel *Sua Sponte* ................................................................... 23

        2.     The Bankruptcy Court Properly Determined that the Claims are Barred by Collateral Estoppel ........................................................ 27

            i.     Legal Standard .............................................................. 27

|  | ii. | The Issues are the Same .................................................................. 29 |
|  | iii. | The Issues Were Actually Litigated ................................................ 33 |
|  | iv. | The Issues Were Essential to the Settlement Order ...................... 36 |

B. The Bankruptcy Court Properly Dismissed Counts 2 and 5 of the Complaint Based on Judicial Estoppel .............................................................................. 38

    1. Legal Standard ......................................................................................... 38

    2. The Elements of Judicial Estoppel are Met ............................................ 39

        i. Appellants' Positions are Inconsistent .......................................... 39

        ii. The Bankruptcy Court Relied on the Position Taken in the Settlement Hearing ...................................................................... 44

C. The Bankruptcy Court Properly Denied Appellants' Request to Amend ............ 46

VI. CONCLUSION ................................................................................................... 47

# TABLE OF AUTHORITIES

**Cases**

*Ackerman v. Am. Airlines, Inc.*,
  924 F. Supp. 749 (N.D. Tex. 1995) .......................................................................... 30, 33, 38

*Ahrens v. Perot Systems Corporation*,
  205 F.3d 831 (5th Cir. 2000) ....................................................................................... 44

*Allen v. C & H Distributors, L.L.C.*,
  813 F.3d 566 (5th Cir. 2015) ..................................................................................... 44, 45

*Am. Furniture Co., Inc. v. Int'l Accommodations Supply*,
  721 F.2d 478 (5th Cir. 1981) ..................................................................................... 25, 26

*Associated Recovery L.L.C. v. Does 1- 44*,
  769 Fed. Appx. 160 (5th Cir. 2019) .............................................................................. 23

*Associated Recovery v. Does 1-44*,
  No. 3:16-CV-1025-L, 2018 WL 1517863 (N.D. Tex. Mar. 28, 2018) ................................... 23

*Boone v. Kurtz*,
  617 F.2d 435 (5th Cir. 1980) ....................................................................................... 24

*Brandon v. Interfirst Corp.*,
  858 F.2d 266 (5th Cir. 1988) ....................................................................................... 38

*Carbonell v. Louisiana Dept. of Health & Human Res.*,
  772 F.2d 185 (5th Cir. 1985) ....................................................................................... 24

*Carroll v. Fort James Corp.*,
  470 F.3d 1171 (5th Cir. 2006) .................................................................................... 26, 27

*Chalmers v. Gavin*,
  No. 3:01–CV–528–H, 2002 WL 511512 (N.D. Tex. Apr. 2, 2002) ........................................ 35

*Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*,
  68 F.3d 914 (5th Cir. 1995) ......................................................................................... 36

*Daniels v. Equitable Life Assur. Soc. of U.S.*,
  35 F.3d 210 (5th Cir. 1994) ......................................................................................... 28

*Hall v. GE Plastic Pacific PTE Ltd.*,
  327 F.3d 391 (5th Cir. 2003) .................................................................................... 39, 41

*Hotard v. State Farm Fire & Cas. Co.*,
  286 F.3d 814 (5th Cir. 2002) ....................................................................................... 39

*Hous. Prof'l Towing Ass'n v. City of Hous.*,
  812 F.3d 443 (5th Cir. 2016) ....................................................................................... 27

*In re Alfonso*,
  Case No.16-51448-RBK, 2019 WL 4254329 (Bankr. W.D. Tex. Sept. 6, 2019) .................. 36

*In re Applewood Chair Co.*,
  203 F.3d 914 (5th Cir. 2000) ............................................................... 31

*In re Coastal Plains Inc.*,
  179 F.3d 197 (5th Cir. 1999) .......................................................... 39, 43

*In re Cyrus II P'ship*,
  358 B.R. 311 (Bankr. S.D. Tex. 2007) ............................................... 32

*In re Devoll*,
  Case No. 15–50122–CAG, 2015 WL 9460110 (Bankr. W.D. Tex. Dec. 23, 2015) ............... 29

*In re Hensley*,
  551 B.R. 792 (E.D. Tex. 2015) ..................................................... 24, 25

*In re Highland Capital Mgmt., L.P.*,
  19-34054-SGJ11, 2021 WL 3418657 (Bankr. N.D. Tex. Aug. 4, 2021) .................. 7

*In re Keaty*,
  397 F.3d 264 (5th Cir. 2005) ............................................................. 35

*In re PBS Foods, LLC*,
  718 Fed. Appx. 89 (2d Cir. 2018) ....................................................... 32

*In re Reddy Ice Holdings, Inc.*,
  611 B.R. 802 (Bankr. N.D. Tex. 2020) ............................................. 34, 35

*In re Southmark Corp.*,
  163 F.3d 925 (5th Cir. 1999) ............................................................. 37

*In re Teligent, Inc.*,
  417 B.R. 197 (Bankr. S.D.N.Y. 2009) ............................................. 34, 35

*In Reading Co. v. Brown*,
  391 U.S. 471 (1968) ...................................................................... 13

*Kane v. Nat'l Union Fire Ins. Co.*,
  535 F.3d 380 (5th Cir. 2008) ............................................................. 43

*Kirschner v. Dondero (In re Highland Capital Mgmt., L.P.*,
  19-34054-SGJ-11, 2022 WL 1050064 (Bankr. N.D. Tex. Apr. 6, 2022) ................ 34

*Love v. Tyson Foods, Inc.*,
  677 F.3d 258 (5th Cir.2012) ......................................................... 2, 39

*Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*,
  195 F.3d 765 (5th Cir. 1999) ............................................................. 46

*Matter of Howe*,
  913 F.2d 1138 (5th Cir. 1990) ........................................................... 42

*Matter of Texas Extrusion Corp.*,
  844 F.2d 1142 (5th Cir. 1988) ........................................................... 36

*Matter of Whistler Energy II, L.L.C.*,
  931 F.3d 432 (5th Cir. 2019) ............................................................. 13

*Mowbray v. Cameron County, Tex.*,
    274 F.3d 269 (5th Cir. 2001) .......................................................................... 24, 26

*Next Level Communications LP v. DSC Communications Corp.*,
    179 F.3d 244 (5th Cir. 1999) .................................................................................. 31

*NGM Ins. Co. v. Bexar Cnty., Texas*,
    211 F. Supp. 3d 923 (W.D. Tex. 2016) ...................................................... 40, 44, 45

*Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. (In re Cajun Elec. Power Coop.)*,
    119 F.3d 349 (5th Cir. 1997) .................................................................................. 37

*Official Comm. of Unsecured Creditors v. Moeller (In re Age Ref., Inc.)*,
    801 F.3d 530 (5th Cir. 2015) .................................................................................. 36

*Oyekwe v. Research Now Group, Inc.*,
    542 F. Supp. 3d 496 (N.D. Tex. 2021) .............................................................. 28, 31

*Quintanilla v. Texas Television Inc.*,
    139 F.3d 494 (5th Cir. 1998) .................................................................................. 46

*Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*,
    583 F.3d 348 (5th Cir. 2009) .................................................................................. 28

*Reynolds v. Tombone*,
    No. 3:96–CV–3330–BC, 1999 WL 439088 (N.D. Tex. June 24, 1999) ............... 35

*Rodriguez v. JPMorgan Chase Bank, N.A.*,
    SA-16-CV-410-XR, 2016 WL 4507388 (W.D. Tex. Aug. 26, 2016) ..................... 47

*Systems Ahrens v. Perot Sys. Corp.*,
    39 F.Supp.2d 773 (N.D. Tex. 1999) ...................................................................... 41

*T.L. Dallas (Special Risks), Ltd. v. Elton Porter Marine Ins. Agency, Inc.*,
    CIVA 4:07-CV-0419, 2008 WL 7627807 (S.D. Tex. May 22, 2008) ..................... 33

*Test Masters Educ. Services, Inc. v. Singh*,
    428 F.3d 559 (5th Cir. 2005) .......................................................................... 2, 29, 46

*U.S. ex rel. Long v. GSDMIdea City, L.L.C.*,
    798 F.3d 265 (5th Cir. 2015) .................................................................................... 2

*Wimm v. Jack Eckerd Corp.*,
    3 F.3d 137 (5th Cir. 1993) ...................................................................................... 46

**Statutes**
28 U.S.C. § 157 ............................................................................................................ 14

**Rules**
Fed. R. Bankr. P. 9024 ................................................................................................ 32

## CORPORATE DISCLOSURE STATEMENT

Appellee Highland Capital Management, L.P. is a limited partnership, the general partner of which is HCMLP GP LLC, a privately held corporation. No publicly held corporation owns 10% or more of the interests in either entity.

# I.      ISSUES PRESENTED

1.      Whether the Bankruptcy Court properly considered collateral estoppel?

2.      Whether the Bankruptcy Court properly found that the Claims are barred by collateral estoppel?

3.      Whether the Bankruptcy Court properly found that Counts 2 and 5 of the Complaint are barred by judicial estoppel?

# II.      STANDARD OF REVIEW

## A.      Collateral Estoppel

A court's determination of collateral estoppel is a question of law reviewed *de novo*. *Test Masters Educ. Services, Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).

## B.      Judicial Estoppel

A court's determination of judicial estoppel is reviewed for "abuse of discretion." *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 271 (5th Cir. 2015) ("[W]e leave the decision to invoke judicial estoppel to the discretion of the trial court (district court or bankruptcy court, as the case may be) in the first instance"); *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012) (same). A court abuses its discretion only if it: "(1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *Love*, 677 F.3d at 262 (internal quotations omitted).  "Deference … is the hallmark of abuse-of-discretion." *Id.*

### III.    SUMMARY OF THE ARGUMENT

This appeal is brought by CLOH and the DAF—two entities controlled by James Dondero, Highland's ousted founder—because Mr. Dondero is unhappy with a settlement approved by the Bankruptcy Court over his objections in early 2021. Instead of asking the Bankruptcy Court to reconsider its order after allegedly discovering "new evidence" supporting his claims, Mr. Dondero caused Appellants to file their Complaint in this Court in the hopes of finding a more hospitable forum.[1] The Complaint, at its core, seeks to unwind the settlement and re-litigate the issues central to the settlement approved by the Bankruptcy Court.

This Court granted Highland's motion to refer Appellants' Complaint to the Bankruptcy Court for adjudication. Thereafter, the Bankruptcy Court granted Highland's Motion to Dismiss, finding that the Claims asserted by Appellants, *i.e.*, Mr. Dondero's proxies, are barred as a matter of law by collateral and judicial estoppel; the Complaint was dismissed with prejudice.

This appeal—Mr. Dondero's third attempt to overturn the Settlement Order—followed. For the reasons set forth below, this Court should affirm the Bankruptcy Court's order and reject Mr. Dondero's blatant efforts to collaterally attack a federal court's order.

---

[1] In addition to the collateral attack on the Settlement through the Complaint, Mr. Dondero's family "trusts" appealed the Settlement, and that appeal is currently pending. [*See* Case No. 3:21-cv-00261-L].

*First*, the Bankruptcy Court properly considered collateral estoppel. Fifth Circuit precedent establishes that a court may apply collateral estoppel *sua sponte* in the interests of judicial economy and when both actions are before the same court—exactly the case here. Appellants' arguments to the contrary are unavailing and rely on irrelevant case law. Nor can Appellants claim surprise or prejudice. Appellants had notice of the Settlement, advanced their positions through extensive briefing, participated in discovery, and attended a lengthy evidentiary hearing. Under the circumstances, the Bankruptcy Court had the authority to dismiss the Complaint on collateral estoppel grounds *sua sponte*.

*Second*, the Bankruptcy Court properly determined that collateral estoppel barred the Claims as a matter of law because each of Appellants' Claims arises from the same operative facts and underlying issues, *i.e.*, the (a) valuation of the HCLOF Interests and (b) the applicability of the "Right of First Refusal," previously litigated in the Settlement Proceeding. The resolution of those issues was essential to the entry of the Settlement Order. Appellants' arguments to the contrary, again, ignore established case law and are premised on misstated facts.

*Third*, the Bankruptcy Court properly found, in an exercise of discretion, that judicial estoppel bars Counts 2 and 5 of the Complaint, both of which are premised on the "Right of First Refusal" in the Members Agreement. During the Settlement Hearing, CLOH disclosed that, after reviewing applicable law, the Members

Agreement, and Highland's brief, it was withdrawing its objection premised on the "Right of First Refusal." The Bankruptcy Court accepted and relied on CLOH's disclosures and actions in approving the Settlement and issuing the Settlement Order (which expressly provided that the "Right of First Refusal" did not apply to the Transfer). Appellants' attempt to resurrect the "Right of First Refusal" as the basis for its Claims is clearly inconsistent with the concessions CLOH made in the Bankruptcy Court. And, like their arguments against collateral estoppel, Appellants' arguments against judicial estoppel are based on a material misunderstanding of the law and facts.[2]

For the reasons that follow, the Bankruptcy Court properly determined that the Claims are barred as a matter of law by these two preclusion doctrines.

## IV.   STATEMENT OF THE CASE

### A.   The Bankruptcy Case

On October 16, 2019 (the "Petition Date"), Highland Capital Management, L.P. ("Highland") filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Case"). The Bankruptcy Case is currently pending in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court").

---

[2] Notably, after withdrawing the CLOH Objection, the CLOH Trustee and his counsel were replaced. Appellants renewed their pursuit of their inapplicable "Right of First Refusal" just weeks after a new CLOH Trustee was appointed and new counsel was retained.

On January 9, 2020, James Dondero, Highland's founder and former Chief Executive Officer, was removed from all control positions at Highland because of concerns about his ability to function as an estate fiduciary. An independent board of directors, which included James P. Seery, Jr., was appointed to manage Highland's Bankruptcy Case and estate. [Bankr. Docket No. 339].[3] Mr. Seery was appointed Highland's Chief Executive Officer and Chief Restructuring Officer in July 2020. [Bankr. Docket No. 854].[4]

On February 22, 2021, the Bankruptcy Court entered the *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Bankr. Docket No. 1943] (the "Confirmation Order"), which confirmed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [Bankr. Docket No. 1808] (the "Plan").

On August 11, 2021, the Plan became effective [Bankr. Docket No. 2700], and Mr. Seery was appointed the Chief Executive Officer of the reorganized Highland.

---

[3] "Bankr. Docket No." refers to the docket maintained by the Bankruptcy Court in Case No. 19-34054-sgj11.

[4] Mr. Seery and the other members of the independent board had no prior employment relationship with Highland or any of its creditors.

## B.   The HarbourVest Settlement

Prior to the commencement of the Bankruptcy Case, HarbourVest[5] invested approximately $80 million (the "Investment") in Highland CLO Funding Ltd. ("HCLOF"). Following the Investment, CLO Holdco, Ltd. ("CLOH"), an entity owned and controlled by the Charitable DAF Fund, L.P. ("DAF"),[6] held 49.02% of HCLOF's interests, HarbourVest held 49.98%, and the remaining 1% was held by Highland and certain of its former employees.

HarbourVest filed claims in the Bankruptcy Case in excess of $300 million, alleging it was fraudulently induced into the Investment by Mr. Dondero, Scott Ellington—Highland's former general counsel[7]—and certain of Highland's former employees. (R. 6075-6134).[8]

On December 23, 2020, Highland filed its motion [Bankr. Docket No. 1625] (the "Settlement Motion") seeking Bankruptcy Court approval of its settlement with

---

[5] "HarbourVest" refers collectively to HarbourVest Dover Street IX Investment, L.P., HarbourVest 2017 Global AIF, L.P., HarbourVest 2017 Global Fund, L.P., HV International VIII Secondary, L.P., and HarbourVest Skew Base AIF, L.P.

[6] CLOH and DAF are controlled and/or directed by Mr. Dondero. *See In re Highland Capital Mgmt., L.P.*, 19-34054-SGJ11, 2021 WL 3418657, at *10 (Bankr. N.D. Tex. Aug. 4, 2021) ("The totality of the evidence was clear that Mr. Dondero sparked this fire (i.e., the idea of bringing the District Court Action to essentially re-visit the HarbourVest Settlement and to find a way to challenge Mr. Seery's and the Debtor's conduct) … Mr. Dondero encouraged [DAF's trustee] to do something wrong, and [DAF] basically abdicated responsibility to Mr. Dondero.").

[7] Highland terminated Mr. Ellington for cause in January 2021.

[8] Citations to "R." refer to the Record on Appeal.

HarbourVest (the "Settlement"). (R. 5553).[9] Pursuant to the Settlement, HarbourVest would transfer its interests in HCLOF (the "HCLOF Interests") to Highland or its nominee (the "Transfer") in exchange for (a) an allowed, general unsecured claim of $45 million, (b) a subordinated, allowed, general unsecured claim of $35 million, and (c) other consideration described in the Settlement. (R. 5561). The Transfer was a necessary component of the Settlement.

The Settlement Motion disclosed all aspects of the Transfer, including (a) what HarbourVest was transferring; (b) the valuation (and method of valuation) of the HCLOF Interests; and (c) the method of the Transfer. (R. 5561 ¶ 32 n. 5; 6057 ¶ 1(b); 1755 ¶ 4).

On January 6, 2021, Mr. Dondero objected to the Settlement Motion [Bankr. Docket No. 1697] ("Dondero's Objection") (R. 1772), contending that the Settlement: (a) was not "reasonable or in the best interests of the estate" because Highland was **_grossly overpaying_** and (b) amounted to "a blatant attempt to purchase votes in support of [Highland's] plan." *Id.* ¶ 1.

On January 8, 2021, The Dugaboy Investment Trust ("Dugaboy") and The Get Good Trust ("Get Good" and together with Dugaboy, the "Trusts")[10] also

---

[9] Highland also filed the proposed *Settlement Agreement and Transfer Agreement for Ordinary Shares of Highland CLO Funding, Ltd.* (R. 6056).

[10] The Trusts are Mr. Dondero's family "trusts" and, like DAF and CLOH, are controlled by Mr. Dondero.

objected to the Settlement Motion [Bankr. Docket No. 1706] (the "Trusts' Objection") (R. 1788), questioning (a) whether HarbourVest had the right to effectuate the Transfer, and (b) the valuation of the HCLOF Interests. (R. 1792-93 ¶ 18).

Also on January 8, 2021, CLOH filed yet another objection to the Settlement Motion [Bankr. Docket No. 1707] (the "CLOH Objection," and collectively with Dondero's Objection and the Trusts' Objection, the "Objections"). (R. 1799). CLOH directly challenged HarbourVest's right to implement the Transfer, contending that: (a) CLOH and the other members of HCLOF had a "Right of First Refusal" to the HCLOF Interests under Section 6 of the Members Agreement, (R. 1800 ¶ 3), and (b) "HarbourVest has no authority to transfer its interest in HCLOF without first complying with the Right of First Refusal" under Section 6 of the Members Agreement. (R. 1801 ¶ 6). The CLOH Objection included a six-page analysis of CLOH's alleged "Right of First Refusal." (R. 1802-07).

Mr. Dondero, the Trusts, and CLOH (collectively, the "Objectors") conducted discovery pursuant to Bankruptcy Rule 9014(c)[11] on the issues critical to their Objections, including: (a) CLOH's alleged "Right of First Refusal" and (b) the

---

[11] The filing of the Objections initiated "contested matters" that automatically conferred on the Objectors all of the discovery rights provided by the Federal Rules of Civil Procedure, including the rights to take depositions, serve interrogatories and requests for admission, and request the production of documents. Bankruptcy Rule 9014(c).

valuation of the HCLOF Interests. Indeed, counsel for Mr. Dondero and CLOH deposed Michael Pugatch, a representative of HarbourVest [Bankr. Docket No. 1705] (R. 1810) on these precise issues. *See, e.g.*, R. 1845, 140:7-23 (questioning on the alleged "Right of First Refusal"); R. 1817, 28:2-29:2 (questioning on the "original projected value of the investment"); R. 1817-18, 29:24-30:25, (questioning on the "projected value based on the original investment or the assets that were held by HCLOF, at the time" of the investment); R. 1823, 50:16-51:25, (questioning on the "diminution of value, as it relates to the underlying assets of HCLOF"); R. 1825, 58:23-59:1-18, (questioning on the unaudited net asset and fair market value of HCLOF and the "net asset value of HCLOF as of February 1, 2019"); R. 1833, 91:1-25 (Mr. Pugatch's "understanding of what the value of HCLOF was" as of February 1, 2019).

On January 13, 2021, Highland filed its reply to the Objections [Bankr. Docket No. 1731] (R. 1865) in which it, *inter alia*, provided an extensive rebuttal to CLOH's "Right of First Refusal" objection. (R. 1878-84 ¶¶ 26-39).

On January 14, 2021, the Bankruptcy Court held a lengthy evidentiary hearing on the proposed Settlement (the "Settlement Hearing"). (R. 1888). At the start of the Settlement Hearing, CLOH **voluntarily withdrew** its Objection—largely premised on the alleged "Right of First Refusal"—stating:

> [CLOH] has had an opportunity to review the reply briefing, and …
> [b]ased on our analysis of Guernsey law and some of the arguments of

counsel on those pleadings and our review of the appropriate documents, I obtained authority from my client, Grant Scott, as trustee for [CLOH], *to withdraw the [CLOH] objection based on the interpretation of the member agreement*.

(R. 1894-95, 7:20-8:6) (emphasis added).

In response, the Bankruptcy Court stated "that eliminates one of the major arguments" in connection with the proposed Settlement. (R. 1895, 8:7-10). To be certain that the issue was resolved, the Bankruptcy Court expressly asked the Trusts' counsel whether he believed "the Court still needs to drill down on" the issue of the Transfer, to which counsel responded: "No … the transferability was a contractual issue between two parties that the Court does not have to drill down on." (R. 1909, 22:5-20).

During the Settlement Hearing, the Bankruptcy Court considered ample evidence concerning (a) the methodology for valuing the HCLOF Interests and (b) the alleged existence of the "Right of First Refusal" under the Members Agreement, including the testimony of Mr. Seery and Mr. Pugatch. (*See, e.g.*, R. 6358-59, 96:20-97:24).

At the conclusion of the Settlement Hearing, the Bankruptcy Court overruled the remaining objections and approved the Settlement [Bankr. Docket No. 1788] (the "Settlement Order"). (R. 5566). In the Settlement Order, the Bankruptcy Court noted that it had, among other things, assessed the credibility of the witnesses and *expressly* authorized the transfer of the HCLOF Interests and found, in relevant part,

that "[p]ursuant to the express terms of the [Members Agreement] … HarbourVest is authorized to transfer its interest in HCLOF … ***without the need to obtain the consent of any party or to offer such interests first to any other investor in HCLOF***." (R. 5569 ¶ 6) (emphasis added). The Bankruptcy Court included such explicit language because of concerns that Mr. Dondero and his entities would "go to a different court somehow to challenge the transfer." (R. 1158, 156:19-20).

## C.    **Appellants Commence the Action Arising from the Settlement**

On April 12, 2021, Appellants commenced this action (the "Action") by filing the *Original Complaint* (the "Complaint") in this Court.[12] (R. 541-566). The Complaint, which failed to disclose the Bankruptcy Case as a "related case" on its civil cover sheet, (R.576), asserts five causes of action (collectively, the "Claims"), **all** of which are based on (a) the alleged breach of the "Right of First Refusal" and (b) the valuation of the HCLOF Interests—the same issues fully litigated in connection with the Settlement:

- **Count 1**: Highland allegedly violated its "broad" duties to Appellants under, *inter alia*, the Investment Advisers Act of 1940 (the "Advisers Act") by: (a) "insider trading with HarbourVest"; (b) "concealing" the value of the HCLOF

---

[12] In addition to Highland, Highland HCF Advisor, Ltd. and HCLOF were also named as defendants. Appellants subsequently voluntarily dismissed HCLOF. [Adv. Proc. Docket No. 80].

Appellants also sought to add Mr. Seery as a defendant in violation of two Bankruptcy Court orders, causing the Bankruptcy Court to hold Appellants, Mr. Dondero, Mark Patrick (DAF's trustee), and their counsel in this appeal—Sbaiti & Company PLLC—in contempt of court. *See In re Highland Capital Mgmt., L.P.*, 19-34054-SGJ11, 2021 WL 3418657 (Bankr. N.D. Tex. Aug. 4, 2021).

Interests; and (c) "diverting" the investment opportunity in the HarbourVest entities to Highland without first offering it to Appellants. (R. 1418, ¶ 67).

- **Count 2**: Highland allegedly breached the Members Agreement by failing to offer CLOH the HCLOF Interests as required by the "Right of First Refusal." (R. 1423-24, ¶¶ 92-102).

- **Count 3**: Allegedly, Highland negligently "calculate[d]" the value of HCLOF Interests and failed to give Appellants the "Right of First Refusal" to purchase those interests. (R. 1424-25, ¶¶ 103-12).

- **Count 4**: Highland and the other defendants allegedly engaged in a pattern of racketeering activity by failing to disclose the "true" value of the HCLOF Interests and making the Transfer. (R. 1425-29, ¶¶ 113-33).

- **Count 5**: Allegedly, Highland tortiously interfered with Appellants' "Right of First Refusal." (R. 1429-30, ¶¶ 134-41).

The supporting allegations for the Claims are that, *inter alia*, (a) Mr. Seery testified *at the Settlement Hearing* that the HCLOF Interests were worth $22.5 million while knowing they were "worth almost double that amount," and (b) Highland violated Section 6 of the Members Agreement because Appellants were "not offered the right to purchase" the HCLOF Interests. (R. 1423 ¶ 96).

## D.    Highland Moves to Enforce the Standing Order of Reference

On May 19, 2021, to forestall Appellants' attempt at forum shopping and to protect the jurisdiction of the Bankruptcy Court,[13] Highland filed a motion to enforce this Court's *Miscellaneous Order No. 33* (the "Order of Reference"), which refers

---

[13] If any of the Claims had merit (and they do not), they would be "administrative expense claims" and were required to have been filed in the Bankruptcy Court under the express terms of the Plan. *Reading Co. v. Brown*, 391 U.S. 471, 483 (1968); *Matter of Whistler Energy II, L.L.C.*, 931 F.3d 432, 441-42 (5th Cir. 2019). Appellants' decision to ignore the Plan and file the Complaint in this Court was an attempt at forum shopping.

all "cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 … to the Bankruptcy Judges of this district …." (*See* R. 572 at Docket No. 22).

**E.      Highland Moves to Dismiss the Action; Appellants Move to Stay**

On May 27, 2021, Highland filed its *Motion to Dismiss Complaint* (the "Motion to Dismiss") (R. 1634) arguing Appellants' Claims are barred by (a) *res judicata*, (b) collateral estoppel, and (c) judicial estoppel. (R. 1653-58, ¶¶ 13-25). Alternatively, Highland argued the Claims should be dismissed for failure to state plausible claims for relief under Rule 12(b)(6). (R. 1659-71, ¶¶ 27-50).

On June 29, 2021, Appellants responded to the Motion to Dismiss (R. 2230), raising various arguments in opposition and requesting leave to amend "to cure any pleading deficiencies." (R. 2272). On July 13, 2021, Highland filed its reply in support of the Motion to Dismiss (R. 2363).

On August 26, 2021, Appellants filed a motion seeking a stay of all proceedings pending appeal of the Confirmation Order (the "Motion to Stay").  The Motion to Stay was fully briefed to this Court.

**F.      The Action Is Referred to the Bankruptcy Court**

On September 20, 2021, this Court entered an order enforcing the Order of Reference and referred the Action, including the Motion to Dismiss and Motion to Stay, to the Bankruptcy Court pursuant to 28 U.S.C. § 157. (R. 540).

### G.    The Bankruptcy Court Dismisses the Action

On November 23, 2021, the Bankruptcy Court held a hearing on the Motion to Stay and the Motion to Dismiss (the "Hearing"), (R. 5301), at which the Bankruptcy Court heard Highland's arguments in support of, and Appellants' arguments in opposition to, both motions.  On December 7, 2021, the Bankruptcy Court issued its order denying the motion to stay (the "Stay Order"), (R. 5405), and on March 11, 2022, the Bankruptcy Court issued its order (the "Order") dismissing the Action in its entirety on the grounds of (a) collateral estoppel and (b) judicial estoppel, (R. 1639).

#### 1.    Res Judicata

The Bankruptcy Court found the Claims were not barred by *res judicata*, explaining that, while the Claims "arise from the same common nucleus of operative fact" and "were litigated and adjudicated in the Bankruptcy Court in connection with the [] Settlement," Appellants "were not provided with procedural mechanisms needed in order to bring" such Claims in connection with Settlement proceedings. (R. 13-18).

#### 2.    Collateral Estoppel

The Bankruptcy Court, while acknowledging that the parties had presented arguments "potentially relevant to the collateral estoppel doctrine" in their pleadings and at the Hearing, stated that it was addressing the issue of collateral estoppel *sua sponte* "in the interest of judicial economy" and "where both actions are before the

same court." (R. 18). The Bankruptcy Court analyzed the three elements required for collateral estoppel: (a) the issues at stake in two proceedings are the same, (b) the issues were actually litigated, and (c) the determination of the issue in the initial litigation was a necessary part of the judgment. The Bankruptcy Court determined that each of these elements were satisfied.

### i.    <u>The Issues Are the Same and Were Previously Litigated</u>

In support of its findings on the first and second elements of collateral estoppel, the Bankruptcy Court explained it held a "multi-hour hearing [*i.e.*, the Settlement Hearing] that included lengthy direct and cross-examination of multiple witnesses and documentary evidence" and "considered arguments and evidence regarding the methodology for the valuation of the HCLOF interest and the existence or non-existence of a 'Right of First Refusal.'" (R. 19-20). Specifically, the Bankruptcy Court "heard credible testimony on, among other things, the value of the HCLOF interests from Mr. Seery and Mr. Pugatch," and "heard how the value of the HCLOF interests plummeted nearly $50 million." (R. 21).

The Bankruptcy Court continued: "[Appellants] allege in the Complaint that Mr. Seery's $22.5 million value of the HCLOF interest was baseless," believing that such interest "had a value of $41.75 million on December 31, 2020, leading up to the [Hearing]." (R. 21). The Bankruptcy Court observed that "the allegations in the Complaint surrounding Mr. Seery's method for valuation of the HCLOF interests

were discoverable at the time of the [] Settlement hearing and directly relevant to the Bankruptcy Court's analysis in approving the [] Settlement" but that "for whatever reason, the Plaintiffs decided not to ask questions of Mr. Seery at the hearing or further challenge Mr. Seery's source or method of valuation for the HCLOF interests at the hearing." (R. 21).

The Bankruptcy Court found that issues relating to the "Right of First Refusal" were also previously litigated. The alleged "Right of First Refusal" was "fully briefed by [Highland] and [CLOH] (with whom DAF is in privity, as its 100% parent), and the merits of such was fully considered by this court in approving the [] Settlement." (R. 23). On this basis, the Bankruptcy Court found Count 1 of the Complaint, "while labeled as a claim for a 'breach of a fiduciary duty,' as opposed to a 'breach of contract,'" was the same argument raised in the CLOH Objection— "Both counts argue that the HCLOF interests should have been offered to [Appellants] who held a superior right to purchase the interests." (R. 23).

The Bankruptcy Court also observed that the Settlement Order included language (a) "to specifically avoid any future assertions or litigation as to whether a 'Right of First Refusal' prevented the transfer of HCLOF interests to Highland or a Highland designee/subsidiary," (R. 22) (citing Settlement Order), and (b) "to document its finding that no 'Right of First Refusal' was enforceable under the HCLOF Members Agreement based on the court's analysis of the underlying

agreements" and CLOH's withdrawal of its Objection premised on this very issue, (R. 22). For these reasons, the Bankruptcy Court concluded, "[Appellants] do not get a second bite of the apple at litigating a purported superior right, by dressing it up as different cause of action, when the issue at stake has already been litigated." (R. 23).

The Bankruptcy Court stated that, while it "does not delve into the merits of every possible claim that is waived or compromised through a settlement … (a) *consideration of the value that the estate was both receiving and paying*, as well as (b) the potential existence of a 'Right of First Refusal' that might have prohibited the Transfer contemplated in the [] Settlement, were very much a focus of the hearing on the [] Settlement." (R. 22) (emphasis in original). These two issues "are the very same issues that are the gravamen of the [] Complaint," and were previously "very much 'actually litigated'" in connection with the Settlement. (R. 22). The Bankruptcy Court found the "Complaint fails to allege any facts independent of: (a) an improper valuation by Mr. Seery or (b) a failure by Highland to honor a 'Right of First Refusal' in favor of CLOH to support relief under its causes of action." (R. 23).

For these reasons, the Bankruptcy Court held that "the issues and facts underlying the [Claims] were fully litigated and ruled on in connection with the [] Settlement," (R. 23), and accordingly, the "first and second element of collateral estoppel are met." (R. 24).

## ii.    <u>The Issues Were Essential to the Settlement Order</u>

The Bankruptcy Court found the third element of collateral estoppel was met because the issues underlying the Complaint—(a) the valuation of the HCLOF Interests and (b) the requirement to offer them to CLOH—"were very much ***necessary* or *essential***" to the Settlement Order. (R. 24). These critical issues "were raised in objections and subject to witness testimony at the [] Settlement hearing and were the primary considerations that had to be evaluated for the Bankruptcy Court to approve of the [] settlement." (R. 23). The Bankruptcy Court "would not have approved the [Settlement] if it thought that it could not be accomplished or would result in Highland later being sued. This would not have been in the best interests of the estate." (R. 24).

For these reasons, the Bankruptcy Court concluded "all three elements of collateral estoppel are met with regard to the fact issues of value of the HCLOF interests and any 'Right of First Refusal' (and the ability/propriety of transferring the HCLOF interests)," and that "***all of the causes of action in the Complaint (Counts 1-5) revolve around these two issues that were previously fully litigated***." (R. 25) (emphasis in original). Accordingly, the Bankruptcy Court held *all* the Claims were barred by collateral estoppel.

### 3. <u>Judicial Estoppel</u>

The Bankruptcy Court analyzed whether the elements of judicial estoppel were met, those being whether (a) the position of the party to be estopped is clearly inconsistent with its previous one and (b) that party convinced the court to accept its previous position. The Bankruptcy Court determined, in a proper exercise of its discretion, both elements were satisfied. The Bankruptcy Court's finding of judicial estoppel was based largely on CLOH's voluntary withdrawal of its "Right of First Refusal" Objection.

### i. <u>CLOH's Positions Are Inconsistent</u>

The Bankruptcy Court explained that "at the Settlement Hearing, CLOH "withdrew its objection, stating that it had determined it had no 'Right of First Refusal,' based on its 'interpretation of the members agreement,'" and that such withdrawal is "clearly inconsistent" with Appellants' Claims that CLOH's "Right of First Refusal" was violated by the Settlement." (R. 27). Moreover, the Bankruptcy Court found, "to the extent Appellants attempt to argue that CLOH "merely withdrew an objection pertaining to an alleged 'Right of First Refusal' ***in the HCLOF Members Agreement***," and not an objection premised on some "non-

contractual" or "fiduciary duty" obligation to offer the HarbourVest Interest to CLOH first, "this is no more than 'ineffectual hair splitting.'" (R. 27).[14]

The Bankruptcy Court thus concluded that Appellants' alleged "Right of First Refusal" Claims "seem to be the classic example of playing fast and loose with the court." (R. 27).

### ii.   The Bankruptcy Court Accepted CLOH's Position

The Bankruptcy Court found the second element—acceptance of a previous inconsistent position—was also satisfied. "[W]hile [Appellants] did not succeed in stopping the approval of the [] Settlement, that is not the proper inquiry." (R. 28). The relevant inquiry is that the Bankruptcy Court "carefully considered [CLOH's] 'Right of First Refusal' argument set out in its lengthy, written objection to the [] Settlement and perceived it as one of the major arguments that was relevant to the [] Settlement," (R. 28), and "relied upon that withdrawal of CLOH's objection in making the determination to approve of the [] Settlement and, specifically, that Highland would not be running afoul of any obligation in entering into the [] Settlement," (R. 28). Therefore, the Bankruptcy Court found "there is no question

---

[14] Although not critical to its ruling on judicial estoppel, the Bankruptcy Court added, "[i]f that weren't enough," counsel for CLOH stated, "I'm not going to enter into a stipulation on behalf of my client, *but [Highland] is compliant with all aspects of the contract.*" (R. 27) (emphasis in original). There was a transcription error in the transcript, and the correct quotation reads: "… I'm not going to enter into a stipulation on behalf of my client *that* the Debtor is compliant with all aspects of the contract." (Br. Exhibit A, 18:13-16) (emphasis added). Appellants contend this scrivener error is a game changer. As discussed below, it is not.

that, by withdrawing the objection, CLOH caused the court to rely upon its withdrawal in making such determination," and accordingly, "[Appellants] convinced the court to accept that previous position." (R. 28).

The Bankruptcy Court found Count 2 (breach of the Members Agreement) and Count 5 (tortious interference) "are based solely upon a 'Right of First Refusal' under the HCLOF Members Agreement," and therefore, these two Claims were barred by judicial estoppel. (R. 29).[15]

## H.   <u>Appellants Appeal the Order</u>

Appellants appealed the Order on March 21, 2022 (the "<u>Appeal</u>") (R. 1), arguing that the Bankruptcy Court erred in applying collateral estoppel because (a) it improperly addressed this issue *sua sponte*, (Br. at 11-12),[16] and (b) none of the elements of collateral estoppel were met, (*id.* at 12-20).[17]

Appellants also argue that the Bankruptcy Court improperly applied judicial estoppel because (a) its finding "100%" turned on a "highly consequential" transcription error (Br. at 21-24), (b) there was no "duty" for Appellants to bring the Claims during the Settlement proceeding, (*id.* at 24-25), (c) the Bankruptcy Court

---

[15] The Bankruptcy Court declined to address whether Appellants failed to state plausible claims upon which relief could be granted "for the sake of efficiency and judicial economy," while also noting it "is inclined to agree with" Highland on this issue. (R. 29).

[16] Refers to *Brief of Appellants the Charitable DAF Fund, L.P. and CLO Holdco, Ltd.* [Docket No. 9].

[17] Appellants also appealed the Bankruptcy Court's Stay Order, and that appeal is currently pending and consolidated with the instant Appeal. [*See* Docket No. 20].

did not rule on the "merits" of any claim or objection because the CLOH Objection was withdrawn, (*id.* at 25-26), and (d) Appellants did not discover facts allegedly giving rise to the "true value" of the HCLOF Interests until after the Settlement Hearing, (*id.* at 26-28). Appellants also argue "leave to amend should have been granted" to the "extent any allegation falls short." (*Id.* at 29). Appellants' arguments are without merit.

## V.    ARGUMENT

The Bankruptcy Court properly found that the Claims were barred by (a) collateral estoppel and (b) judicial estoppel.

"While the [] court must accept as true all factual allegations in the complaint, it need not resolve unclear questions of law in favor of the plaintiff." *Associated Recovery v. Does 1-44*, No. 3:16-CV-1025-L, 2018 WL 1517863, at *17 (N.D. Tex. Mar. 28, 2018), *aff'd sub nom. Associated Recovery L.L.C. v. Does 1-44*, 769 Fed. Appx. 160 (5th Cir. 2019) (internal quotations omitted). Thus, "dismissal under Rule 12(b)(6) is appropriate when a successful affirmative defense appears on the face of the pleadings." *Id.*

## A.    The Bankruptcy Court Properly Found the Claims Were Barred by Collateral Estoppel

### 1.    The Bankruptcy Court Properly Applied Collateral Estoppel *Sua Sponte*

Appellants contend the Bankruptcy Court's *sua sponte* dismissal of the Action on collateral estoppel grounds was improper because it did not give Appellants

"notice and opportunity to be heard" on this issue in violation of Fifth Circuit precedent. (Br. at 11-12). Appellants' argument ignores the substantial case law and is without merit.

A court may raise a preclusive doctrine *sua sponte* if: (a) it is in the "interest of judicial economy, where both actions were brought before the same court" *or* (b) "where all of the relevant facts are contained in the record before" the court and "all are uncontroverted." *Mowbray v. Cameron Cnty., Tex.*, 274 F.3d 269, 281 (5th Cir. 2001) (internal quotations omitted); *see also In re Hensley*, 551 B.R. 792, 799-800 (E.D. Tex. 2015) (court's "judicial initiative" in applying collateral estoppel *sua sponte* is appropriate in interest of judicial economy and where court is "wholly aware of the judgment and the issues raised in the [second judgment]"); *Carbonell v. La. Dept. of Health & Human Res.*, 772 F.2d 185, 189 (5th Cir. 1985) ("… [I]n the interest of judicial economy res judicata may properly be raised by a district court *sua sponte*, particularly where both actions are brought in the courts of the same district") (internal quotations omitted); *Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir. 1980) ("Dismissal by the court sua sponte on res judicata grounds … is permissible in the interest of judicial economy where both actions were brought before the same court.")

Here, both the Settlement proceeding and the Action were adjudicated in the Bankruptcy Court, and all facts relevant to the collateral estoppel analysis were

undisputed and contained in the record before the Bankruptcy Court. The Bankruptcy Court, therefore, properly applied collateral estoppel in the interest of judicial economy. *See Hensley*, 551 B.R. at 799-800 (affirming lower court's dismissal on collateral estoppel grounds *sua sponte* where "the Bankruptcy Court was wholly aware of the" relevant judgment and issues, noting "[e]ven if the Appellees did not explicitly use the words "collateral estoppel" or "issue preclusion" in their pleadings … before the Bankruptcy Court, that is not a bar to the Bankruptcy Court raising the doctrine *sua sponte*"); *Am. Furniture Co., Inc. v. Int'l Accommodations Supply*, 721 F.2d 478, 482 (5th Cir. 1981) (same).

Appellants cannot credibly claim any surprise or prejudice by the Bankruptcy Court's application of collateral estoppel. There is no dispute that they (a) received notice of the Settlement Motion and terms of the proposed Settlement (including the purported valuation and contemplated Transfer), (b) filed an extensive objection, raising the same issues raised in their Complaint, (c) participated in discovery, (d) voluntarily withdrew their Objection,[18] (e) participated in a lengthy evidentiary hearing, and (f) received notice of the Settlement Order. Moreover, as the Bankruptcy Court expressly acknowledged, the parties *actually* presented arguments

---

[18] Notably, before withdrawing its objection, CLOH's counsel declared to the Bankruptcy Court that he had, and his client had, reviewed Highland's reply brief, analyzed Guernsey law, and reviewed "the appropriate documents." Based on that diligence, CLOH made the informed and considered decision "to withdraw the [CLOH] objection based on the interpretation of the member agreement." (R. 1894-95, 7:20-8:6).

related to collateral estoppel in their pleadings and at the Hearing. (*See* R. 15; R. 1653 ¶ 13; R. 5349, 5359, 5402).

Thus, the Bankruptcy Court appropriately considered collateral estoppel. *See, e.g.*, *Am. Furniture*, 721 F.2d at 482 (considering collateral estoppel *sua sponte* and noting "nor may we decline to consider the application of controlling rules of law to dispositive facts, simply because neither party has seen fit to invite our attention to the issue by technically correct and exact pleadings.")[19] Appellants' contention that "no Fifth Circuit case" supports a court's dismissal *sua sponte* on preclusion grounds, (*see* Br. at 12), is plainly wrong because it ignores this long line of uncontroverted Fifth Circuit precedent.

Appellants' reliance on *Carroll v. Fort James Corp.*, 470 F.3d 1171 (5th Cir. 2006), (*see* Br. at 11-12), is misplaced. *Carroll* did not involve a court's dismissal of an action *sua sponte* on preclusion grounds. Rather, it involved the *sua sponte* dismissal of an amended complaint for failure to state a claim where the "court made no specific reference anywhere in the order to the seven additional tort claims

---

[19] *See also Mowbray*, 274 F.3d at 281-82 (finding "the usual concerns preventing a court from raising res judicata sua sponte do not apply" where appellee "certainly had notice of the prior judgment; she had litigated it just a few months earlier" and had not been denied "the chance to argue … why the imposition of an estoppel would be inappropriate") (internal quotations omitted); *Am. Furniture*, 721 F.2d at 482 (applying preclusion doctrines *sua sponte*, noting appellant "can claim no surprise or prejudice" where appellant's "pleadings address the existence of the [prior] proceedings and explicate its involvement in those proceedings," noting that "[i]n any event, we have before us [appellee's] Motion to Dismiss. This motion may be taken to raise the plea of *res judicata* when we consider the record before us on this appeal.")

remaining in the original complaint" and where the parties disagreed "about the effect of that dismissal on those earlier claims." The appellate court held that the district court did not provide the parties with notice before rendering the order of dismissal because "it did not even so much as mention those claims in its order of dismissal, despite purportedly disposing of them." *Id.* at 1176-77. *Carroll* is inapplicable to the present facts.

Accordingly, the Bankruptcy Court properly considered the doctrine of collateral estoppel.

### 2. The Bankruptcy Court Properly Determined that the Claims Are Barred by Collateral Estoppel

Appellants also contend the Bankruptcy Court erred in dismissing the Action on collateral estoppel grounds because "the elements of collateral estoppel cannot be met." (Br. at 12-20). Appellants' argument is without merit.

#### i.    Legal Standard

"*Res judicata* encompasses two separate, but linked, preclusive doctrines: (1) true *res judicata* or claim preclusion and (2) collateral estoppel or issue preclusion." *Hous. Prof'l Towing Ass'n v. City of Houston*, 812 F.3d 443, 447 (5th Cir. 2016) (internal quotations omitted). Thus, while *res judicata* precludes re-litigating claims or causes of action that were or could have been previously litigated in a prior action, collateral estoppel precludes the re-litigation of *issues or facts actually litigated in the original action* whether or not the second suit is based on the same cause of

action. *See Oyekwe v. Research Now Group, Inc.*, 542 F. Supp. 3d 496, 506 (N.D. Tex. 2021), *appeal dismissed*, 21-10580, 2021 WL 8776378 (5th Cir. Dec. 28, 2021).

Collateral estoppel applies when, in the initial litigation, (1) the issue at stake in the pending litigation is the same, (2) the issue was actually litigated, and (3) the determination of the issue in the initial litigation was a necessary part of the judgment. *See Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 353 (5th Cir. 2009). "The parties to the suits need not be completely identical, so long as the party against whom estoppel applies had the full and fair opportunity to litigate the issue in the previous lawsuit." *Id.* "Once an essential issue is actually litigated and determined, that issue is conclusive in a subsequent action between the same parties, or persons in privity with them, regardless of whether the second suit is based on the same cause of action; collateral estoppel merely precludes the same issues from being reurged." *Daniels v. Equitable Life Assurance Soc'y of U.S.*, 35 F.3d 210, 214 (5th Cir. 1994).

"Collateral estoppel will apply in a second proceeding that involves separate claims if the claims involve the same issue … and the subject matter of the suits may be different as long as the requirements for collateral estoppel are met." *In re Devoll*, Case No. 15–50122–CAG, 2015 WL 9460110, at *3 (Bankr. W.D. Tex. Dec. 23,

2015) (internal quotations omitted). As found by the Bankruptcy Court, all three elements of collateral estoppel were met.

### ii.    **The Issues Are the Same**

The Bankruptcy Court properly found the first element of collateral estoppel was met. The issues underlying the Claims were predicated on the same issues that were central to the Settlement proceeding—(a) CLOH's alleged "Right of First Refusal" and (b) the valuation of the HCLOF Interests. The Claims were supported by allegations that, *inter alia*, Mr. Seery testified *at the Settlement Hearing* about the value of the HCLOF Interests while knowing they were "worth almost double that amount," (R. 555 ¶ 76), and Highland violated Section 6 of the Members Agreement by failing to "Offer [CLOH] the chance to buy" the HCLOF Interests, (R. 558 ¶ 96).

As the Bankruptcy Court explained, (a) consideration of the value that Highland was both receiving and paying and (b) a potential "Right of First Refusal," which may have prohibited the Transfer, "were very much a focus of the Settlement Hearing." These issues were extensively briefed, and all Objectors took discovery and had the opportunity to examine Mr. Seery and Mr. Pugatch at the Settlement Hearing on these issues. The Settlement was approved only after resolution of these two issues. Accordingly, the Bankruptcy Court properly found that the issues underlying the Claims and those raised in the Settlement proceeding were the same for purposes of collateral estoppel. *See, e.g.*, *Test Masters Educ. Servs., Inc. v. Singh*,

428 F.3d 559, 572-76 (5th Cir. 2005) (finding party barred from litigating issue where claims in second case were different but arose from and were "fatally intermixed with" the central issue decided in the first case); *Ackerman v. Am. Airlines, Inc.*, 924 F. Supp. 749, 753 (N.D. Tex. 1995) (claim barred by collateral estoppel where same critical issue was resolved in prior case and "is identical to the one presented in the present action" and "based upon the same general facts").

In a vain attempt to re-package these undisputed facts, Appellants contend the issues were not identical because their Objections "only addressed whether HarbourVest … had performed all conditions precedent to being able to transfer the interests to Highland," but that "nothing in there suggested of breach of the [Member Agreement] by *Highland* when it transferred to its subsidiary[.]" (Br. at 13-14) (emphasis in original). That contention is factually wrong and misses the point.

First, Highland did not transfer the HCLOF Interests to its subsidiary. Under the terms of the Settlement, HarbourVest was only authorized to transfer the HCLOF Interests to a subsidiary of Highland, not to Highland itself. *See* Settlement Order, (R. 5569 ¶ 6) ("HarbourVest is authorized to transfer its interests in HCLOF ***to a wholly-owned and controlled subsidiary of the Debtor*** … without the need to obtain the consent of any party or to offer such interests first to any other investor in HCLOF") (emphasis added). Pursuant to the Order, HarbourVest directly transferred the HCLOF Interests to HCMLP Investment LLC—an entity wholly-owned by

Highland. Appellants cannot turn a one-step transaction into a two-step transaction in an attempt to avoid collateral estoppel.

Second, for purposes of collateral estoppel, the court need not find that the *exact* claim was previously litigated, only that the operative facts were the same. Here, Counts 2 and 5 were based on a breach of the "Right of First Refusal." As the Bankruptcy Court correctly noted, Appellants cannot avoid collateral estoppel by dressing their Claims for failure to comply with the "Right of First Refusal" in new clothes. *See Oyekwe*, 542 F. Supp. 3d at 508 (finding re-litigation of issues barred by collateral estoppel, noting "[n]o matter how he labels the current claims, their underlying facts are identical, and those facts have been litigated"); *Next Level Commc'ns LP v. DSC Commc'ns Corp.*, 179 F.3d 244, 255 (5th Cir. 1999) ("It does not matter that the claims in each suit are different, or that the subject matter of each suit is different, so long as the issue litigated in each suit is identical.")

Appellants' reliance on *In re Applewood Chair Co.*, 203 F.3d 914 (5th Cir. 2000), is misplaced. *Applewood* concerned the narrow issue of whether, absent a provision in an approved plan of reorganization specifically releasing the personal guaranties of the debtor's officer, director, and shareholder, *res judicata* bars a bankruptcy court's ability to clarify whether an order released the individual indebtedness of that officer. This issue is entirely irrelevant to the present facts.

Finally, Appellants' attempt to escape the imposition of collateral estoppel by contending that their Advisers Act Claims are based on facts "not discovered until after [the Settlement Hearing]," (Br. 15), is unavailing. As discussed *supra*, the issues underlying the Claims are inextricably linked with the issues raised during the Settlement proceeding. To the extent the Claims are premised on new "facts," a collateral attack on the Bankruptcy Court's Settlement Order is not the proper remedy. Rather, Appellants should have moved for reconsideration of the Settlement Order *in the Bankruptcy Court. See In re Cyrus II P'ship*, 358 B.R. 311, 317 (Bankr. S.D. Tex. 2007) (dismissing adversary proceeding attacking 9019 settlement and holding appropriate remedy was a "motion to reconsider [the settlement] under Rule 9024");[20] *In re PBS Foods, LLC*, 718 Fed. Appx. 89, 90 (2d Cir. 2018) (affirming order affirming bankruptcy court's denial of motion for relief from order approving settlement where motion to reconsider argued that "Trustee misrepresented facts to the bankruptcy court during the settlement hearing.")

Accordingly, the first and second elements of collateral estoppel are met.

---

[20] *Cyrus* also found that "[t]he approval of the compromise embodied in the [] Settlement Agreement was hotly contested … [and parties] filed lengthy objections to the proposed compromise. Nevertheless, after substantial negotiations, the various [parties] withdrew their objection and the Court approved the compromise. Accordingly, the Court will require a substantial showing—in compliance with Fed. R. Bankr. P. 9024—before that order is vacated."

### iii.  **The Issues Were Actually Litigated**

The Bankruptcy Court properly found the issues were actually litigated. "For collateral estoppel purposes, 'full and fair litigation' means actual litigation in the previous suit of the same fact issues." *T.L. Dallas (Special Risks), Ltd. v. Elton Porter Marine Ins. Agency, Inc.*, CIVA 4:07-CV-0419, 2008 WL 7627807, at *4 (S.D. Tex. May 22, 2008).

Here, Appellants had a full and fair opportunity to advance their positions on valuation of the HCLOF Interests and the alleged "Right of First Refusal" in the Settlement proceeding, and these issues were resolved by the Settlement Order. CLOH vigorously advanced its position premised on its "Right of First Refusal" through detailed briefing. (*See* R. 1802-07). CLOH made a considered and informed decision to withdraw its Objection and represented to the Bankruptcy Court that it was doing so after engaging in extensive diligence and concluding that withdrawal was justified "based on [CLOH's] interpretation of the member agreement." (R. 1894-95, 7:20-8:6).[21] The Bankruptcy Court thus properly found the issues were "actually litigated." *See Ackerman*, 924 F. Supp. 753 (finding issue was "actually litigated" where "each side was given a full and fair opportunity to be heard," and "plaintiffs cannot now complain that they did not have an adequate chance to litigate

---

[21] As noted *supra*, the Trusts also litigated this issue, and after CLOH withdrew its Objection, the Bankruptcy Court expressly asked the Trusts' counsel whether he believed the issue was resolved. (*See* R. 1909, 22:5- 20).

this issue," further noting that in the prior case, the plaintiffs "vigorously advocated their position and were adequately represented by counsel; they were given a full and fair opportunity to litigate their claim"); *In re Reddy Ice Holdings, Inc.*, 611 B.R. 802, 810 (Bankr. N.D. Tex. 2020) (same).

Appellants maintain that because CLOH withdrew its Objection, the matter was not litigated as "withdrawal is equivalent to the objection not having been asserted in the first place." (Br. at 16). Appellants ignore the facts and offer no support for their conclusory argument other than the following irrelevant case law.

*Kirschner v. Dondero (In re Highland Capital Mgmt., L.P.*, 19-34054-SGJ-11, 2022 WL 1050064 (Bankr. N.D. Tex. Apr. 6, 2022) did not involve collateral estoppel. Rather, the issue was whether a claimant could preserve its right to a jury trial by withdrawing a proof of claim filed in the bankruptcy court, *see id.* at *6, an issue entirely irrelevant to this case.

*In re Teligent, Inc.*, 417 B.R. 197 (Bankr. S.D.N.Y. 2009) also does not support Appellants' position. There, the court found an issue was not "actually litigated" as part of a 9019 motion where a party raising an issue in a second proceeding "had no stake in the outcome of the 9019 Motion," "lacked standing to oppose the 9019 motion," and the issue "was never raised, litigated, or decided in connection with the 9019 Motion, nor was it necessary to do so." 417 B.R. at 211.

Here, unlike in *Teligent*, the same core issues were litigated, critical to, and decided in connection with the Settlement Order.[22]

Appellants' argument that the Claims were not "actually litigated" because "a Rule 9019 order does NOT involve a trial or even a 'mini trial' of the facts or issues," (Br. at 17-18), is equally misguided. "There is no requirement of a trial or evidentiary hearing to conclude that an issue has been 'actually litigated.'" *In re Keaty*, 397 F.3d 264, 271 (5th Cir. 2005); *see also Reddy Ice*, 611 B.R. at 810 (same). "The requirement that an issue be 'actually litigated' for collateral estoppel purposes simply requires that the issue is raised, contested by the parties, submitted for determination by the court, and determined." *Keaty*, 397 F.3d at 271. Here, the critical issues pertaining to the "Right of First Refusal" and the valuation of the HCLOF Interests were raised, contested, and resolved by the Bankruptcy Court and were therefore "actually litigated."

The cases Appellants rely on in support of their contention that there was no trial on the merits are inapplicable. Many of them involve direct appeals of 9019 settlements where the reviewing court simply notes the standard by which the

---

[22] Appellants' remaining cases—*Chalmers v. Gavin*, No. 3:01–CV–528–H, 2002 WL 511512 (N.D. Tex. Apr. 2, 2002) and *Reynolds v. Tombone*, No. 3:96–CV–3330–BC, 1999 WL 439088 (N.D. Tex. June 24, 1999)—deal with whether an action was barred by *res judicata* where a claim was previously dismissed without prejudice.  Here, the Bankruptcy Court's findings on *res judicata* are not at issue in this Appeal, and these cases are thus irrelevant.

bankruptcy court generally reviews such settlements.[23] Here, Appellants actively participated in the Settlement Hearing and raised the same issues that were actually litigated, decided, and crucial to the Settlement Order.

Appellants also vaguely contend that the Bankruptcy Court's ruling that *res judicata* did not apply "equally applies to the collateral estoppel element." (Br. at 19). Appellants ignore the different tests for *res judicata* and collateral estoppel. As discussed *supra*, the Bankruptcy Court found that while *res judicata* did not bar the Claims since Appellants were not afforded the procedural mechanism to litigate them in the Settlement proceeding, collateral estoppel barred Appellants from re-litigating "the very same *issues* that form the gravamen of the [] Complaint." (R. 22). Appellants' suggestion that the Bankruptcy Court's *res judicata* findings should somehow be extended to collateral estoppel is thus improper as a matter of law.

### iv.    <u>The Issues Were Essential to the Settlement Order</u>

The Bankruptcy Court properly determined the third element of collateral estoppel was met. Appellants provide no basis to challenge this conclusion except

---

[23] *See Official Comm. of Unsecured Creditors v. Moeller (In re Age Ref., Inc.)*, 801 F.3d 530, 541 (5th Cir. 2015) (reviewing direct appeal of a 9019 settlement for abuse of discretion, noting that "[i]n evaluating a Rule 9019 settlement, a bankruptcy court need not 'conduct a mini-trial to determine the probable outcome of any claims waived in the settlement.' [] The bankruptcy court must 'apprise [itself] of the relevant facts and law so that [it] can make an informed and intelligent decision'"); *In re Alfonso*, Case No.16-51448-RBK, 2019 WL 4254329, at *4 (Bankr. W.D. Tex. Sept. 6, 2019) (same); *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995) (same); *Matter of Tex. Extrusion Corp.*, 844 F.2d 1142, 1158 (5th Cir. 1988) (same).

for the same faulty arguments discussed *supra*; namely, that (a) a 9019 order does not involve a trial on the merits, and (b) the Claims could not have been brought in the Settlement proceeding. (*See* Br. 19-20).

In determining whether the Settlement was in the "best interests of the estate," the Bankruptcy Court considered "(1) The probability of success in the litigation, with due consideration for the uncertainty of law and fact, (2) The complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) All other factors bearing on the wisdom of the compromise." *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 356 (5th Cir. 1997).

This analysis necessitated consideration of "the value of the HCLOF interests" and the applicability of the alleged "Right of First Refusal." (*See* R. 22). As the Bankruptcy Court observed, it would have been nonsensical to find a settlement to be in the "best interests" of Highland's estate when the same settlement would breach multiple contractual and extra-contractual obligations and immediately result in *more* litigation and damage to the estate. *See In re Southmark Corp.*, 163 F.3d 925, 933 (5th Cir. 1999) (finding that causation issue was "necessary to the court's decision" in prior disgorgement proceeding where the bankruptcy court "had to consider that [causation] issue in performing the fact-specific inquiry required by case law to determine" ultimate disgorgement action," noting that if

causation issue was re-litigated and resulted in different findings, the bankruptcy court "would have had to reappraise the disgorgement amount"); *Ackerman*, 924 F. Supp. at 753 (finding the determination of issue was "necessary" to prior judgment where "issue was central to the final decision"). The Bankruptcy Court, therefore, properly determined that the third prong of collateral estoppel was met.

Accordingly, the Bankruptcy Court correctly decided that the Claims were barred by collateral estoppel.

## B.    **The Bankruptcy Court Properly Dismissed Counts 2 and 5 of the Complaint Based on Judicial Estoppel**

Appellants maintain that the Bankruptcy Court improperly found judicial estoppel barred Counts 2 and 5 of the Complaint on the ground that "none of [the] elements of judicial estoppel are met." (Br. at 21). Appellants' arguments are without merit.

### 3.    **Legal Standard**

Judicial estoppel is "a common law doctrine by which a party who has assumed one position in [their] pleadings may be estopped from assuming an inconsistent position." *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988). The doctrine is made "to protect the integrity of the judicial process" by "prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self-interest." *Id.* "[A] party cannot advance one argument and then, for convenience or gamesmanship after that argument has served its purpose,

advance a different and inconsistent argument." *Hotard v. State Farm Fire & Cas. Co.*, 286 F.3d 814, 818 (5th Cir. 2002). "Statements made in a previous suit by an attorney before the court can be imputed to a party and subject to judicial estoppel." *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003).

Judicial estoppel applies where: (1) "the position of the party to be estopped is clearly inconsistent with its previous one; and (2) that party … convinced the court to accept that previous position." *In re Coastal Plains Inc.*, 179 F.3d 197, 206 (5th Cir. 1999). However, "judicial estoppel is not governed by inflexible prerequisites or an exhaustive formula for determining [its] applicability, and numerous considerations may inform the doctrine's application in specific factual contexts.'" *Love*, 677 F.3d at 261 (internal quotations omitted); *see also Long*, 798 F.3d at 272 ("[C]ourts should determine if applying judicial estoppel is appropriate in light of the specific facts of each case and the doctrine's purpose of protecting the integrity of the judicial process") (internal quotations omitted).

### 4. <u>The Elements of Judicial Estoppel Were Met</u>

#### i. <u>Appellants' Positions Are Inconsistent</u>

The Bankruptcy Court properly determined that the first element of judicial estoppel was met. "Inconsistency of positions often turns on whether the positions relate to the same issue or thing." *NGM Ins. Co. v. Bexar Cnty., Tex.*, 211 F. Supp.

3d 923, 932 (W.D. Tex. 2016). "Where two positions take opposite sides on the same issue, many cases find an inconsistency of positions." *Id.*

In the Settlement proceeding, CLOH withdrew the CLOH Objection premised on the "Right of First Refusal … based on [its] interpretation of the [M]embers [A]greement," effectively conceding that the "Right of First Refusal" in Section 6 of the Members Agreement did not apply to the proposed Settlement. (*See* R. 1895). CLOH now argues in support of Counts 2 and 5 that Highland violated Section 6 of the Members Agreement (among other duties and obligations) by not giving CLOH the right to purchase the HCLOF Interests pursuant to the "Right of First Refusal." (R. 558 ¶¶ 92-102, 564 ¶¶ 134-41).[24]

These positions are clearly inconsistent. Thus, the Bankruptcy Court properly found, in an exercise of its discretion, that CLOH's withdrawal of the CLOH Objection is "clearly inconsistent" with its Claim that the Settlement violated CLOH's "Right of First Refusal." *See, e.g.*, *NGM*, 211 F. Supp. 3d at 932 (finding two positions "clearly inconsistent" where party's second position that "it should be liable for less than the full [bond amount]" since the "bond is limited to a certain subset of deliverables due under the contract" is inconsistent with original position

---

[24] Notably, the CLOH Trustee (Grant Scott) and his counsel (John Kane) who filed and then withdrew the CLOH Objection were replaced shortly after the Settlement was approved. Promptly after being appointed and retained, CLOH's new Trustee (Mark Patrick, a long-time employee of Mr. Dondero's companies) and counsel (Mazin Sbaiti) filed the Complaint based on positions inconsistent with those taken by their predecessors in the Settlement proceedings.

that "the bond guarantees the completion of the contract"); *Hall*, 327 F.3d at 398 (5th Cir. 2003) (finding judicial estoppel where statement made in a previous suit by party's attorney was imputed to that party and was clearly inconsistent with party's current position on the same issue); *Ahrens v. Perot Sys. Corp.*, 39 F. Supp. 2d 773, 778 (N.D. Tex. 1999) (finding two positions were "contradictory" under judicial estoppel where they both "concerned the exact same event").

To escape this result, Appellants contend the Bankruptcy Court's findings on this issue "100% turned on" the "highly consequential" transcription error (*See* Br. at 21-24). As discussed *supra*, the Bankruptcy Court's finding is based primarily on CLOH's considered and deliberate withdrawal of the CLOH Objection. (*See* R. 26-27). The Bankruptcy Court only referenced counsel's statement to highlight its underlying finding that CLOH's positions are inherently contradictory. (*See* R. 27 (noting "[i]f [CLOH's withdrawal of its Objection] *weren't enough* …) (emphasis added)). Moreover, the Bankruptcy Court's finding that the second prong of judicial estoppel was met was based *exclusively* on CLOH's withdrawal of its Objection. (*See* R. 28). Thus, the Bankruptcy Court's findings on judicial estoppel do not, as Appellants suggest, turn on a one-word transcription error. Rather, they hinge almost entirely on CLOH's deliberate and informed withdrawal of its Objection.

Appellants' contention that there was no inconsistent position because "there was no duty for Appellants to … lodge any objection to the 9019 in the first place,"

(Br. at 25), is equally without merit. Whether CLOH had a "duty" to lodge an objection during the Settlement proceeding is irrelevant to judicial estoppel, and Appellants' cite to *Matter of Howe*, 913 F.2d 1138 (5th Cir. 1990), does not suggest otherwise. *Howe* concerned whether a debtor's claim was barred by *res judicata*, not judicial estoppel. In its analysis, the court noted that "[u]nder the 'quick motion-and-hearing style' of contested matters … a party may not be required, or even allowed, to bring all of his claims." 913 F.2d at 1145. Whether Appellants could have raised their Claims in the Settlement proceeding is only relevant to the Bankruptcy Court's finding on *res judicata*, which is not at issue in the Appeal.

Appellants' argument that any inconsistent position was "inadvertent" because the facts underlying the "true value" of the HCLOF Interests "was not uncovered until after" the Settlement proceeding, (Br. at 27-29), is likewise deficient. The Bankruptcy Court's finding of "clearly inconsistent" positions was not based on allegations concerning the value of the HCLOF Interests but was premised on CLOH's inconsistent position with respect to the "Right of First Refusal." As the Bankruptcy Court correctly determined, CLOH's withdrawal of its Objection was "clearly inconsistent" with Counts 2 and 5 of the Complaint, which were "based solely upon a 'Right of First Refusal' under the HCLOF Members Agreement." (R. 29). Appellants' argument of "inadvertence," premised on

allegations that were irrelevant to the Bankruptcy Court's judicial estoppel findings, should, therefore, be rejected.

Finally, Appellants contend, without any basis, that, "at its core, the judicial estoppel doctrine does not apply." (Br. at 21). Appellants' cite to *Kane v. National Union Fire Insurance Co.*, 535 F.3d 380 (5th Cir. 2008), does not support their argument. The court in *Kane* considered whether a debtor was judicially estopped from pursuing a prepetition claim where that claim was brought prior to bankruptcy, but the debtor failed to disclose such claim in its bankruptcy schedules. In its analysis, the court considered whether such failure to disclose was "inadvertent," noting that in similar circumstances, "we have applied judicial estoppel to bar an unscheduled claim when others, the debtors or other insiders, would benefit to the detriment of creditors if the claim were permitted to proceed." 535 F.3d at 386. Here, the issue is not whether a debtor is judicially estopped from asserting a claim that was not disclosed in its schedules, and *Kane* is thus inapplicable to the issues at hand.[25]

Accordingly, the first element of judicial estoppel was satisfied.

---

[25] Appellants' cite to *In re Coastal Plains, Inc.*, 179 F.3d 197 (5th Cir. 1999), is irrelevant for these same reasons. (*See* Br. 27).

### ii.    The Bankruptcy Court Relied on the Position Taken in the Settlement Hearing

The Bankruptcy Court also properly determined, in an exercise of its discretion, that the second element of judicial estoppel was met. The success requirement is satisfied when a court "necessarily accepted . . . and relied on" a party's position in making a determination. *Ahrens v. Perot Sys. Corp.*, 205 F.3d 831, 836 (5th Cir. 2000). "Judicial acceptance does not require a formal judgment; rather, it only requires that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." *Allen v. C & H Distribs., L.L.C.*, 813 F.3d 566, 573 (5th Cir. 2015) (internal quotations omitted).

 "The requirement of judicial acceptance minimizes the danger of a party contradicting a court's determination based on the party's prior position, and, thus mitigates the corresponding threat to judicial integrity." *NGM*, 211 F. Supp. 3d at 933 (internal quotations omitted).

Here, the Bankruptcy Court necessarily relied upon CLOH's withdrawal of its Objection when approving the Settlement. As the Bankruptcy Court explained, CLOH's withdrawal of its Objection "eliminate[d] one of the major arguments" considered by the Court in determining that Highland "would … be running afoul of any obligations" by entering into the Settlement. Thus, as the Bankruptcy Court explained, "there is no question that, by withdrawing the objection, CLOH caused the court to rely upon its withdrawal in making such determination." Accordingly,

the Bankruptcy Court properly exercised its discretion in finding the judicial acceptance prong was satisfied. *See NGM*, 211 F. Supp. 3d at 935 (finding party convinced bankruptcy court "to accept its position, which was clearly inconsistent with the position that it currently takes" where prior position formed basis for court approved settlement); *Allen*, 813 F.3d at 573 (affirming district court's finding that judicial estoppel barred claim where party's "failure to disclose" their claim in prior proceeding "led to the bankruptcy court accepting the inconsistent position that there was no such claim.")

Appellants' contention that they could not have convinced the Bankruptcy Court to accept CLOH's position "simply by withdrawing the [O]bjection" is premised on Appellants' irrelevant notion that a 9019 hearing does not involve a trial on the merits, and that a bankruptcy court has "discretion" to approve settlements. (Br. at 26-27). Appellants offer no support for these arguments, other than citing to the same inapplicable case law discussed *supra*. (*See* Br. at 26-27) (citing *Moeller*, 801 F.3d at 541; *Alfonso*, 2019 WL 4254329, at *8; *Extrusion Corp.*, 844 F.2d at 1145; and *Foster*, 68 F.3d at 917). The Bankruptcy Court, therefore, properly found that the second element of judicial estoppel was satisfied.

Accordingly, Counts 2 and 5 of the Complaint were barred by the doctrine of judicial estoppel.

**C.**     **The Bankruptcy Court Properly Denied Appellants' Request to Amend**

Appellants also maintain that, to the extent "any allegation falls short," the Bankruptcy Court erred in denying their request to amend the Complaint. (Br. at 29). "Whether leave to amend should be granted is entrusted to the sound discretion of the district court, and that court's ruling is reversible only for an abuse of discretion." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993); *see also Quintanilla v. Tex. Television Inc.*, 139 F.3d 494, 499 (5th Cir. 1998). Under Rule 15(a), "[a] court may deny a motion for leave to amend if there is undue delay, bad faith or dilatory motive, undue prejudice or futility of the amendment." *Test Masters*, 428 F.3d at 571 n. 8.

As discussed *supra*, the Bankruptcy Court did not deny leave to amend the Complaint on the ground that the Claims failed to state plausible claims for relief. Instead, the Bankruptcy Court, in a proper exercise of its discretion, denied Appellants' request to amend the Complaint because the "doctrines of collateral estoppel and judicial estoppel bar the [C]laims as a matter of law[.]" (R. 29). *See Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999) ("Thus, because [parties] could not relitigate the issues decided in [prior action], the court did not abuse its discretion in denying the motion to amend"); *Rodriguez v. JPMorgan Chase Bank, N.A.*, SA-16-CV-410-XR,

2016 WL 4507388, at *5 (W.D. Tex. Aug. 26, 2016) ("The Court finds that granting

[] leave to amend would be futile, as [] claims are barred by … collateral estoppel.")

Appellants' contention that leave to amend should have been granted is thus

moot and should be rejected by the Court.

## VI.    <u>CONCLUSION</u>

The Bankruptcy Court properly dismissed the Action based on (a) collateral

estoppel and (b) judicial estoppel. Accordingly, the Court should deny the Appeal

and affirm the Bankruptcy Court's Order.

Dated: June 27, 2022

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
      jmorris@pszjlaw.com
      gdemo@pszjlaw.com
      hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*

Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
      ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P.*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 8015</u>

This document complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(B)(i) because, according to Microsoft Word, it contains 11,094 words, excluding the portions of the document exempted by Fed. R. Bankr. P. 8015(g).

By: */s/ Zachery Z. Annable*
Zachery Z. Annable